All right, thank you everyone. Our next case this morning is Donald Kinsella v. Baker Hughes. Mr. Coffey. Good morning, Your Honors. My name is Tim Coffey and along with co-counsel Chris Kelleher, we represent the appellant in this matter, Donald Kinsella. I thank you in advance for your time and thoughtful consideration of the matter. This matter comes before you, Your Honors, for review of the district court's denial of Mr. Kinsella's motion to vacate, in part, the arbitration award. Specifically, Mr. Kinsella moved to vacate the denial of his Americans Disabilities Act failure to accommodate claim. I will address the merits of the appeal. My co-counsel, Mr. Kelleher, will speak to the appellee's motion for sanctions that they filed. Before you get into the merits, would you address the question of jurisdiction? I believe this court has jurisdiction and the district court had jurisdiction by virtue of the filing of the complaint initially in the district court. The complaint always was maintained and pending in the district court. Well, it was dismissed and then reinstated, as I understand the record. It wasn't, the lawsuit wasn't stayed pending arbitration. It was, well, it was initially stayed and then there was a dismissal and then a reinstatement. Isn't that what happened here? I don't believe there was a dismissal of the lawsuit until, after I filed my, after the court ruled on the motion, denying my motion to vacate, the court ruled on that, and then a few months later, the court entered a final unappealable order, but I don't believe Mr. Kinsella's underlying lawsuit was ever dismissed, no. It was always pending before Judge Kittleman. October 20, the red brief page, Statement of Jurisdiction, so page one, on October 29th, 2021, the district court dismissed the action without prejudice and with leave to reinstate. So it was a dismissal. Hour 46. I'm sorry, you are absolutely correct, and then I moved to reinstate, which was granted by the court. Right, but how does that solve the problem under the Badgerill case? I'm not familiar with the case, Your Honor, I'm very sorry. We didn't anticipate a jurisdictional issue, none was briefed, none was raised. Well, we have to address the jurisdiction. I certainly understand you do. My view on it was, once the case was reinstated, and the judge went on to entertain a rule on the motion to vacate, I retook jurisdiction of the case. Well, we're here on an order denying Section 10 motion to vacate the arbitration award, is that right? Yes, we are. And the Badgerill case says that federal courts have no jurisdiction over those motions or actions or applications unless, on the face of the application itself, there's a basis for federal jurisdiction. There's no look-through to the underlying dispute. It's essentially a state law contract dispute about whether the arbitrator exceeded the authority granted to him or her by the contract for the arbitration, so those cases belong in state court. There's no look-through as there would be for a motion to compel or a petition to compel arbitration. Look-through to the ADA, yes. Right, so we can't rely on the underlying ADA look-through. Section 10A4 of the FAA specifically states that the court would have jurisdiction. No, it doesn't. There is no independent source of jurisdiction in the Arbitration Act. That's the whole point of the Badgerill case. There needs to be an independent basis in diversity jurisdiction on the face of the application or some federal law basis on the face of the application, not the underlying cause of action. Well, I would, I mean, I guess I would respond that there would be diversity between the parties in this case, so if it wasn't spelled out. Is there diversity of citizenship? I believe so, yes. As you can tell, as Illinois, our defendants are Texas. Okay. We may need some further briefing on the jurisdictional question here. Yes. Okay. You can go ahead on the merits. This is a case. Might I start you out, please? Yes, please. Thank you. Because, you know, you argued in the briefs that the parties didn't merely submit a blank slate, but a narrow claim that was to be decided based on specific elements. Including whether the defendant failed to provide a reasonable accommodation. But isn't it pretty well established in our ADA cases that a determination of that element often turns on the issuers to the parties' engagement in the interactive process? So what my question is, is how could it be improper for the arbitrator to consider that? I would just say that the elements submitted by the parties, agreed to and submitted by the parties, for the failure to accommodate claim did not include good faith or any other type of compliance with the interactive process. The interactive process, I believe, my opinion on the interactive process is the goal is to identify whether a reasonable accommodation exists. In this case, the parties went through an interactive process and, in fact, the accommodation was identified. So the open position was identified here. At that point in time, since we did prove that he was qualified and we proved the other elements that were submitted by agreement, at that point in time when that position is identified as open and available, it is incumbent and a duty on the employer to appoint and reassign. So I don't believe any of the interactive process that was brought up by the court, first of all, it's not an element approved. And second of all, it was unnecessary to the discussion. Isn't this a discussion or an argument though with regard to the merits? We're here on, to the extent there is jurisdiction, we're here on a very limited review. The statute really prescribes only very certain circumstances where an arbitration award can be considered. Yeah, well, it exceeds authority, is one of them. Arbitrators have authority to decide only the issues actually submitted to them by the parties. That's a quote from AgCorp versus Anglin. There's no doubt here that he received the issues three times from the parties, all agreed, five elements approved, and he added two. And he did it post-hearing. He added two elements. He added two issues. That's an argument that the arbitrator used the wrong legal standard. That's not a question of whether the arbitrator exceeded his authority. Well, he got the legal standard from the parties. That's all his authority is. He doesn't have authority to add to it. No, the authority in the arbitration agreement. Yeah. The claims submitted by the parties. Parties submitted one claim, one FTA claim, failure to accommodate claim, three times to them with the same elements. And those are those section 4.03 jury instruction, better jury instruction elements for the failure to accommodate claim. And he went ahead and exceeded that and surpassed that. That's not a question of exceeding authority. That's a question of applying a different legal standard to decide the failure to accommodate claim. I think it's both in this case, Mayor. I respectfully disagree. Otherwise, every motion to vacate where there's a claim of legal error would come in the door. Wouldn't we be reined in with these motions that Chief Judge Sykes is talking about? I think in every case where the parties say, here is the issue. This is what we agree on you deciding. If the person, if the arbitrator goes beyond that and adds legal elements that are not in that issue that's agreed to by the parties, then yeah, I think the person exceeded their authority. I do not understand how you can fault the arbitrator for applying proper ADA law, even if the parties failed to identify it to the arbitrator. I'm pretty confident that in this circuit there's no discriminatory intent element to a failure to accommodate claim. And there's no but-for causation element to a failure to accommodate claim. I don't think that's disputed by anybody. So those two elements are not in the claim. The elements that are in the claim, the five elements, I was at the hearing and we proved them inside out. He added two elements to the claim. That's a claim of legal error. I think when the parties tell him these are the elements. You have to keep in mind how narrow, how very narrow our review of arbitration awards is to begin with. And, you know, you can't, it just isn't sufficient to demonstrate that an arbitrator's award contained error of law or fact. Indeed it did. I respectfully believe we've demonstrated more. I point to Edmund, I'm sorry, Edstrom Industries, Decompanion Life. I've seen no difference and I suggest there's no difference between parties saying apply Wisconsin law and the arbitrator applying New York law to this situation. I don't see any difference between an arbitrator is not free to think or say the contract says X, but my view, I'm going to apply Y. That's from Chicago Telegraphical Union number 16. So I believe that law supports this appeal and would support your Honor's reversal of the decision. I see I'm almost out of time. All right. Thank you. Mr. Keller was going to briefly address the motion for sanctions. That's fine. Thank you very much. Thank you. Thank you. Mr. Rowland. I'm sorry. We'll go to sanctions first and then Mr. Rowland and he can talk about both issues. Good morning, Your Honors. Rule 38 sanctions are a hammer, but Baker Hughes wields it like a flyswatter. This is not an extreme case. There was no bad faith here. My colleague and I pledged to Mr. Kinsella to pursue justice for him as far as we conceivably could. We believe we have done so. Your Honors, we certainly recognize we have an uphill battle. The odds are against us. And the pathway to victory here is narrow given the court's review of arbitrator decisions. However, the facts remain that there are cases that we believe, specifically Edstrom and Chicago Typographical Union, that we believe fit, our case fits into that rubric. The purpose here of Baker Hughes' motion is twofold. First, as a scare tactic to attempt to stymie Mr. Kinsella from pursuing his appellate rights. And secondly, to cast a cloud of impropriety over the appeal's merits. We respectfully suggest these are improper reasons under Rule 38. We would also ask the court to consider the precedential impact of a sanctions finding here. And that would be to chill appellate rights. It would also be used as a cudgel at the circuit mediation conferences by appellees. So we would respectfully assert that the reasons here again are improper, that we have pursued in good faith these arguments. And the precedent that typically in which this court finds sanctions involve unprofessional conduct by attorneys, or instances where attorneys are disregarding, controlling authority. And we respectfully assert there's no such situation here. Again, we've pursued these arguments, these issues, we've done it in good faith. And sanctions here should be applied sparingly, and this situation is not one where it's warranted. And we respectfully ask that the motion be denied. If there are no further questions, thank you for your time, Your Honor. Thank you. All right, now Mr. Rowland.  This is a very straightforward case involving an appeal of, essentially an appeal of an arbitrator's decision by way of a motion to vacate. Those decisions are not appealable in any way, shape, or form. That's the whole point of having arbitration, is to allow for finality, and for that decision to hold. This court has repeatedly indicated that you cannot claim it to be, you know, an arbitrator abusing authority, but really you're challenging the law. So this is like exactly- Wait, wait, wait. Forgive me, but- Yeah. But what, do you think that we could consider a case? Well, okay. Do you think we consider whether an arbitrator's application of law was so egregious as to constitute arbitrary action? Could we do that, in your view? I mean, I know, you know, you argue, of course, that an arbitrator's award will be enforced, even if it contains a serious error of law. But would you agree that we could consider whether the arbitrator's application of law is just so egregious as to constitute action that can be viewed as totally arbitrary? Well, I think the line is drawn in this circuit where, so for example, in the Edstrom case, where everyone agreed, or the party submitted, and the agreement provided for the application of Wisconsin law, and the arbitrator didn't do that. And so in this case, for example, if the arbitrator had said, well, this is not the ADA case, this is an American, this is a ADEA case, or an FLSA case, and applied those kind of standards, there would be review here. Because that's like, that goes beyond the authority of the arbitrator to interpret an agreement that provides for jurisdiction over the case itself. So it's just squarely within the line of cases that hold that even serious gross error is not sufficient to overturn an arbitrator's reward as long as he was diligently, conscientiously applying the law, which he did here. This was no small endeavor by this arbitrator. The final judgment was order number 25 in his process. And so he was very diligent, very careful. And the opinion itself is very careful and very considered. Maybe some of the, you know, some of the headlights were in the footnotes, but that doesn't change the analysis that he took the ADA, consciously applied it. And the argument that he somehow had to use the jury instruction, pattern jury instructions, to decide the case, pattern jury instructions are not in the arbitration agreement, just the federal statute. So, and frankly, even if he, even assuming they governed the last standard of, in the pattern jury instructions 403, defendant failed to provide plaintiff with a reasonable accommodation. That's exactly what he, you know, examined. Was there a failure to accommodate? How do you do that? Well, this court has prescribed that reviewing the interactive process to determine where the breakdown was is the most common way you're going to find whether the reasonable accommodation was or wasn't granted appropriately. So in this case, the arbitrator assigned blame to both parties and said it broke down. It was a fault of Mr. Kinsella. It was a fault of Baker Hughes. And so therefore couldn't like decide against Baker Hughes because it was not the sole reason for the hangup of the reasonable accommodation process. Before you get deeper into your argument about the merits and the scope of our review and then your sanctions motion, would you please address the subject of jurisdiction under Badgerow? Yes. So Badgerow obviously is the operative case. And frankly, before Badgerow, this court had already decided the very same issue and indicated that there's no look through in section 10 of the Arbitration Act. Badgerow, like all the other cases I could find, involved a petition to arbitrate that was then arbitrated and there was a new case that was filed with a petition, separate petition, after an arbitration concluded. Here, the district court retained jurisdiction by following a stay for I think three years and then learning that the arbitration hearing had occurred, dismissed without prejudice with leave to reinstate. And I can't find a case where Badgerow or this court's prior rulings allowed, decided that that was not retaining jurisdiction and that required a new petition or on its face for the motion to vacate to show jurisdiction. So I'm not sure exactly how it's different if a court stays in action or dismisses it without prejudice, with leave to refile. The district court clearly anticipated that there might be a motion to vacate by providing for seven days for the party to come back and say, here's what happened. Yeah, I think it's the dismissal that is potentially problematic here because the Arbitration Act does permit a stay pending arbitration once a motion to compel arbitration is granted. And so that's not jurisdictionally improper because the case comes into federal court on a federal claim with federal question jurisdiction. But here, the suit was dismissed and then reinstated and we've got a case that says that's sort of the functional equivalent of that sort of administrative dismissal is the functional equivalent of a stay and so doesn't oust the original jurisdiction. Pre-Badgero, I think we have to rethink all of this after Badgero confirmed that there's no look-through which we had held before. And then if there's an independent basis on the face of the motion to vacate in the form of diversity jurisdiction, we should know about that. There are elements of diversity here as Mr. Goncalves' counsel indicated. But I really don't want to give up on the point that Badgero really doesn't apply here because the dismissal without prejudice is exactly that. And in other contexts, including settlements, the district courts have been allowed to retain jurisdiction essentially over a settlement because in the judgment of the dismissal without prejudice, explicitly indicate that it's subject to this reinstatement. So... I think only if there's a consent decree. Actually, there are cases that do it outside the consent decree process. So it's not favored. I can't say that it's favored by this court, but there is a line of authority that provides for a settlement in the settlement process for the court to retain jurisdiction in a number of different ways. In the Arbitration Act context? No, no. Oh, okay, that's... I'm just equating. I'm equating it because I don't understand the difference would be if in fact that's the rule in settlement agreements, why it wouldn't apply here. It's because it's the text of the Arbitration Act that forecloses any jurisdiction, any look-through jurisdiction in Section 9 and 10 motions or petitions based on the text of Section 9 and 10 as distinct from Section 4. I guess the Arbitration Act, the Badgero case, talks about whether to look through or whether you can look through. Unanimously decided you cannot. But that presumes that the court, the district court, no longer has jurisdiction and is being asked to open it again. And here, it's a dismissal without prejudice, which I think jurisdictionally is also non-appealable like a stay. And so I'm not sure why it is that... Well, it's a dismissal. It just permits refiling. But that just begs the question about whether the refiling or reinstatement of the original suit has a jurisdictional basis consistent with Badgero for purposes of entertaining a Section 10 motion to vacate. Yes, I understand the point, Your Honor. I really do. I just think... In your red brief, your footnote 3, you reference Badgero. You say, alternatively, to the extent that Badgero applies, district court had jurisdiction under 1331. Yes. What's your position with regard to that now? Mr. Coffey's raised diversity. Looks like in your brief you're talking federal question. The Arbitration Act itself is a federal question. No, that's what Badgero answered in the negative. And prior to that, the Vader case. I really do think here if you agree with the analysis that Badgero applies and this dismissal actually divested the District Court of Jurisdiction over the action, then there is diversity. Now, it's plain in the pleadings that that's the case. It wasn't in the motion to compel itself, which is why this is a strange circumstance to be applying Badgero in the context of a case that was stayed and then at the very end dismissed without prejudice. Because it's just a motion to compel or a motion to vacate here is presumed the case is alive because there's no pleading. It's not a complaint where the plaintiff would then identify diversity or any other form of jurisdiction. I think we're going to need a briefing on this. I do too. We'll issue an order after arguments. Okay. I expected this might come. Okay. You can pick up where you left off. Thank you. So, back to my argument on the merits. Obviously, the District Court did its level best. I'm sorry, the arbitrator did his level best to decide the issue under the ADA which is the operative statute. He had no obligation to follow the pattern instructions. That was just a guidepost for the arbitrator. There's nothing in the agreement that says you must apply pattern jury instructions in an arbitration proceeding. And in any event, the real question before the arbitrator was there a failure to accommodate which is exactly what he analyzed. He determined there was a breakdown in the interactive process which is the normal way in which courts look at the reasonable accommodation process. And the fact that throughout the proceeding respondents were making the argument that Mr. Kinsella had not applied had not followed the basic elements of trying to be considered for an accommodation simply failed in that effort altogether. And so, the arbitrator very clearly and carefully indicated that you're not qualified if you don't get analyzed by the person who can determine your qualifications. And so, why would the arbitrator have to do anything else other than determine the person's not qualified and was not there was no failure of accommodation if in fact the individual plaintiff in that case or complainant in the arbitration didn't take the appropriate steps to even get that process moving. And so, if that's the case there was a breakdown in the erratic process. There was some fault on respondents slash the police here by sort of failing to recognize that an application had come in. It was a confusion between systems that Baker Hughes had at the time for hiring and replacement. So, yeah, sure there was some fault on both sides and that's exactly what the arbitrator determined. In light of that there's no it's not appropriate to hold defendant liable for failing to accommodate when in fact what it did was determine that it's equally shared burden and equally shared problem in this case where it just didn't have any and so the appropriate outcome was reached which was that there was no failure to accommodate. So, I guess Do you want to talk about the sanctions? Do you want to talk about sanctions? Sure. For the very same reason that this case sits in that paradigm of challenging arbitral authority by way of a really challenging legal error by way of arbitral authority the cases are so clear this court is not wouldn't be weighing in for the first time to grant sanctions for this repetitive behavior in this court and in the district courts where you don't you just can't use the guise of arbitral authority to challenge what is plainly what is challenging is a legal error and in this case that's more obvious than normal because right after the decision was issued Mr. Kinsella went to the arbitrator and said this was clear error. When he went to the district court even in the opening effort to reinstate he also indicated that there was plain legal error and as the district court here recognized that's exactly what he's arguing that there's elements were put in that shouldn't be in that he misanalyzed this. We disagree that the judge or the arbitrator actually considered those elements in the reasonable accommodation claim mentioned that there's no setup of here are the standards you didn't meet these two last factors that I've somehow created in a reasonable accommodation context. It's just right down the alley of what this court has said parties should not do. They should not bring the action in the district court and they certainly should not bring it here. We tried to impress upon plaintiff's counsel that this was an inappropriate treatment of the cases and inappropriate to bring the motion to vacate in the district court. We sent a rule 11 letter explaining why this fits into the paradigm of all the other cases and we cited them in that letter about why this is a sanctionable conduct on their part. That's why we're here and that's why we're seeking sanctions. Thank you. Thank you very much. Mr. Coffey, I believe you have a little time left for rebuttal. May it please the court, in the few minutes, seconds I have left,  Strum is on point, Your Honors. It is on point and this is Ed Strum. It has not been distinguished at all by counsel. It supports this motion and there's nothing sanctionable about this and Ed Strum supports this case and is highly persuasive and has not been touched. Counsel has not been in an attempt to distinguish it. There's no duty to apply. Yes, there are legal errors here. Sure. But that's not why we're here. So we're not here because of legal errors. We're here because of a clear exceeding of his power that we gave him, the parties gave him. The agreement just says submitted. The issue is submitted. The agreement doesn't say ADA. So the parties submitted the ADA and they also submitted that guidepost the law. Here are the elements by agreement. That makes this case different than what the defendant is trying to tell you. Your time has expired at this point. We thank you for your time and an extended additional briefing. We'll definitely comply with your orders. Yes, thank you. We'll get jurisdictional order out shortly and thanks to all counsel the case is taken under